### MICHAEL TIERNEY *v.* WILLIAM J. DEAN.

**Rescission of Contract.**

Where one enters into a contract by which he is at a named time entitled to receive a deed for real estate, and it occurs that the person required to convey has no title to the land and fails to procure any, the purchaser is entitled to a rescission of the contract.

Estoppel.

> Where one has executed notes as the purchase price of real estate, which the seller is unable to convey because he has no title, but before the failure of title is known one who is about to purchase the notes is assured by the maker thereof that they are all right and will be paid, such maker is estopped, so far as the holder of the notes is concerned, to set up a failure of consideration, although the consideration may have failed as between him and obligee in the notes.

### APPEAL FROM HANCOCK CIRCUIT COURT.

#### May 23, 1878.

Opinion by Judge Elliott :

The judgment appealed from was rendered against appellant on some notes executed by him to J. S. Lightfoot for a tract of two hundred acres of land lying in Hancock county. Lightfoot bound himself to get a deed to this 200 acres of land and then convey it to appellant. There is no evidence in this record that Lightfoot either procured a deed to be made to himself, or that he ever made and acknowledged a deed to appellant. He made a deed to appellant and delivered it to him, but as he contended that this deed was not a compliance with Lightfoot's contract it was not acknowledged nor recorded.

We are also satisfied that Lightfood had no legal title to the land sold to appellant. Bennett reserved 200 acres of some four thousand sold to F. F. Thompson for Lightfoot's benefit under a verbal contract, as he says, to convey the land to Lightfoot when he paid him its value, which he has never done.

It is, therefore, clear that Lightfoot had nothing but an equitable title to the land for which he has paid nothing, and that appellant as to him is entitled to a rescission of the contract; and if Lightfoot were still the owner of the notes sued on he would be entitled to their surrender, and he is entitled to their surrender anyway, even in the hands of the appellee, unless his own conduct has made such relief unconscientious and unequitable.

It appears that some time after the purchase of the land from Lightfoot and the execution and delivery of the notes in dispute to him, Lightfoot proposed to transfer them to appellee, in part payment of some mules which he proposed to purchase from him. The appellee and Lightfoot agreed upon the price of the mules, and appellee says he told Lightfoot that he would take the notes of appellant on his statement that they were all right. A day was fixed

between appellee and Lightfoot for the delivery of the mules at Lightfoot's house, and when the delivery took place appellant was present.

The evidence of appellee is that before he closed the contract of sale and delivered the mules to Lightfoot or received the notes in dispute he asked appellant if they were all right, and he answered that they were and that he would then deliver him a mule at a certain price to be credited on the notes, and Lightfoot's son swears that such was his understanding of the conversation. Judge Babbage swears that he heard appellee ask appellant if he did not agree to his purchase of his notes from Lightfoot, to which appellant responded that he told him when he bought the notes that he would as soon pay him the amount of the notes as anybody. C. W. Moorman swears that he heard a conversation between appellee and appellant at Judge Babbage's shop and that on that occasion appellee asked appellant if at the time of his purchase of the notes in dispute from Lightfoot he did not agree that he would pay them, to which he responded that he told him on that occasion that the notes were just and he would as soon pay him as Lightfoot, but he afterwards found out that he ought not to have so agreed.

It is true that appellant swears that he had a conversation with appellee at the time of the delivery of the mules to Lightfoot, in which he was informed by appellee that he had bought his notes and he then said he would pay them when he received a good deed to the land, for the price of which they had been executed to Lightfoot; but he does not deny that he told appellee that the notes were all right, or that he offered to make a partial payment at the time the notes were transferred to appellee.

He says that at Judge Babbage's shop appellee said he would not have gotten into any difficulty about the notes had he not thought Lightfoot would have made appellant a deed according to his contract, but he nowhere denies the other statements which appellee swears he had made, which was that appellant told him at the time of his purchase and before their transfer that he would pay them, and that appellant then and there agreed that he had so stated, but afterwards found out that he should not have done so.

In *Short v. Jackson,* Sneed, 192, the general doctrine is that, where the obligor in a bond assures the assignee before the assignment that he will pay the bond at maturity or that there is no defect in the paper, he is estopped afterward to set up a failure of

the consideration upon which the bond was executed as a bar to an action by such assignee.

There is some evidence tending to prove that after appellee had delivered the mules to Lightfoot and received appellee's notes, and just as the parties were leaving the place of such delivery, appellant said that he would pay the notes when he received a general warranty deed to the land; but this conversation or statement must have been long after the one stated by appellee and young Lightfoot, for according to them it took place before the delivery of the mules or transfer of appellant's notes to appellee.

The evidence greatly preponderates to the conclusion that appellant had full confidence in Lightfoot and in his compliance with his contract to make him a deed at the time appellee received the notes in dispute, and in view of this confidence, and to enable Lightfoot to make the desired purchase of the mules, he told appellee that there was no infirmity in the notes and that they were all right and would be paid. Having in this way induced the appellee to part with his property and buy his paper, he is estopped, so far as appellant is concerned, to set up a failure of consideration, although the consideration may have failed as between him and the obligee in the notes in dispute.

Wherefore the judgment is *affirmed*.

*W. N. Sweeney, for appellant.   J. A. Dean, for appellee.*